Case number 22-7123. Larry Elliot Klayman, appellant, versus Julia Porter, et al. Mr. Klayman for the appellant, Mr. Paterno for the appellees. Good morning. Just to let everyone know, Judge Rogers is participating telephonically today. Mr. Klayman, you may begin. Good morning to my colleagues and to counsel. This is Judge Rogers. Good morning. May it please the court, Judge Millich, Judge Rowe, Judge Rogers. This is a very important case, not just with regard to me, but with regard to all members of the District of Columbia Bar, or for that member, any lawyer or litigant who seeks to assert his First, Fifth, and Fourteenth Amendment rights. And I respectfully request that when you your decision, that you issue that in detail and go through the various points that have been set forth in our briefs, because they're very detailed and there are a number of issues. I don't have a lot of time today, but I'm going to highlight. Number one, preliminary and permanent injunctions were issued, preventing me from bringing lawsuits initially in federal court with regard to just four particular matters, cases regarding the bar. Judge Wilkins, excuse me, the judge went way beyond the lower court judge and what was before the court at that time. But importantly, and here's the important issue, the preliminary injunction was issued a one-line order without any evidentiary hearing under Rule 65, much less findings of fact or specific conclusions of law. Consequently, his preliminary injunction is void as a matter of law. He did not follow the federal rules of civil procedure. Now, that's even more true with regard to the permanent injunction, which he issued. And of course, we know there's a very high bar in declaring someone a vexatious litigant. Cases of Duro v. Mitchell, 289 F. Sub 3rd 2nd D.D.C. 2018, Enray Powell, 851 F. 2nd 427. That's a District of Columbia Circuit Court case. Enray Oliver, which is 682 Federal 2nd 443 3rd Circuit. We cited that. It's extreme to be able to enjoin someone, particularly as a pro se litigant under the Sixth Amendment, from asserting his or her rights. But here's why you needed an evidentiary hearing. There were issues of fact here. Number one, the issue is whether I had filed relevant to this case frivolous lawsuits. I was not sanctioned in any of those cases. No one ever found them to be frivolous at all. And development of the facts of what was at issue is extremely important. And of our initial brief, I trust that you will read that very, very thoroughly, and I'm sure you will, because that's the heart of it. Mr. Clemon, do you understand the authority for the injunction here to be based on the inherent authority of the courts, of Article III courts? I mean, what do you think is the source of the injunctive authority here? There is no source, Your Honor. Not in this instance. There's no source. This was totally an improper and illegal decision in all due respect. So do you think that the test from Henry Powell is the relevant test, or is there a different test that we should apply? No, it's completely relevant, and so is Duro versus Mitchell, and so is the Oliver case, the cases that we cited. But let me just get to the heart of the issue, and that's why I asked you to look at pages 20 to 27. I deserved an evidentiary hearing as to whether I had filed frivolous cases or pleadings. I deserved an evidentiary hearing as to whether there was abuse of process by the District of Columbia Bar disciplinary apparatus. I deserved an evidentiary hearing with regard to my conduct towards judges. I have always been respectful. Yes, I have moved to disqualify judges in this court, but I've been respectful, and I'm respectful now. Time and expense of what was being spent. I'm the little guy. I'm the guy that's being hurt. My time is being taken away to the point of trying to drive me into bankruptcy with everything that I've got to do with this agenda to try to remove me from the practice of law. I deserve an evidentiary hearing on the issue of whether there was bad faith under the Younger Doctrine, whether or not the District of Columbia Bar counsel, outside of his authority, was sending letters to other courts, ex parte, that I didn't even know was being sent, where I practiced, which cut me off from the opportunity to even exhaust all my appellate rights. Can I ask you, with respect to the Younger issue and the injunctive relief that you seek in your complaints, are you seeking an injunction against the future, against disciplinary proceedings, is number one, or the future sending of these letters to other bars, or just an injunction to get a, I know you say you haven't seen a copy of these letters. What is the injunction? Good question, Your Honor. In this case, in this case, I was seeking just an injunction to stop tortuously interfering. It was equitable relief, I saw. It wasn't even financial damage. And how? By having them issue no letters? By sending communications that I didn't even know about, and I requested those letters to be provided to me, so I would know. I just want to break this down, just so I understand carefully, and it can be, you can seek injunctions against all these things. I just want to know in your words. Yes. So, is one thing for which you wish an injunction is to get a copy of the letter or letters that have been sent. Am I correct in understanding that? And to stop interfering. Is that exactly my question? Yeah. Okay. In part. And then, okay, I'm not limiting you. And two? Yeah. It sounds like to stop future issuance of letters to other buyers. Is that right? In these particular proceedings that were in front of the court. Do you have any reason to think that these are continuing to go out at this point? I do, yes, because they've loaded up disciplinary proceedings in addition to this. I do have. So, those will be from other disciplinary proceedings? Yes. Not from this procedure? Yes, but in this case, I was seeking them on those particular matters in California and in Texas, and it's the Ninth Circuit. And, you know, just to tell you about the bad faith, I just asked for copies of what was being sent, and they refused to provide it, disciplinary counsel. But what is a guy to do, so to speak, under those circumstances? They say the letter is a matter of public record. Have you not been able to find it? It's not a matter of public record. In some of the courts, in some of them, ultimately, I was able to obtain them myself after the fact, but they were not initially. I was cut off. But you want injunctive relief, so have you already seen the letters that were sent to Texas and California? I have not. Oh, you said you were able to see some letters. I think maybe the Northern District of Texas, I eventually got to see one of the letters, but I haven't seen them otherwise. No, I have not. But that's not the issue. The issue is not letters as much as the fact that the interference is being caused. Well, the issue for injunctive relief. Yes, I'm asking for injunctive relief. That's what I was. And that raises the question. There was no reason to dismiss my case. There was no immunity. I cited several cases, including the Supreme Court case, that federal judges are not immune from immunity and neither are the Ninth Circuit, for instance. California has no immunity with regard to our council prosecutors. There's no immunity there. So you're going to have to face the issue of the choice of law here, too. That's been briefed on the choice of law. That's been briefed, Mr. Clayman. One question I had is whether the D.C. bar officials here should be viewed as federal officials, because the D.C. courts are Article I courts created by Congress. Well, just so the briefing assumes that they are they are district officials, which I guess is like a quasi state. But one question I had is whether federal common law should apply to these officials because they may be federal officials. I was wondering if you had any. Well, I don't. We didn't reach that issue in our briefs. Your Honor, I can do a supplementary brief if you'd like. That's an interesting question. I don't believe that it will be treated as federal, but in any event, the immunity which was accorded by the D.C. Court of Appeals is void. It does not exist. You cannot create that out of whole cloth. The D.C. City Council never gave them immunity. And there's no basis to claim immunity. It's given to themselves. And that is why they can already decided that question, haven't we? I don't believe you have. And if you did, you can certainly reverse it because it would be incorrect. You can't reverse another panel. Judge can't decide to give him or herself immunity. And just to be brief, I don't have a lot of time left here. But, you know, we we started this country because King George III gave immunity to his judges that were rubber stamping his edicts. That was a reason why we have a jury system as a matter of fact. Judges cannot accord immunity to themselves. We fought a revolution, in large part, over that issue. But let me get to another point here, which is extremely important, and I can't emphasize it enough, is that Judge Walden then issued an order recently, you know, brought these cases together. And it took nine months to issue. This is with regard to another disciplinary proceeding where I was, I filed a Rule 60 complaint to set aside a decision, a suspension, which was based, as I alleged, on fraud and prosecutorial misconduct. And he enjoined that as well. He went to a state proceeding. He had no authority to do so. And even beyond that, if you look at his order, he enjoins any other form. Does that mean I can't file a bar complaint against someone that's acting improperly? He has lost sight of his authority, in all due respect, to Judge Walden. And a federal judge simply cannot do that. He has cut off my constitutional rights to defend myself against a greater enemy. This law firm here, Aiken Gump, a mega firm, represents the bar for free if they claim they've been hurt. Pro bono. They'll never have a bar complaint go forward against them, for sure. But I have to deal with it. And that's, Your Honor, is why, you know, you know who I am. And I'm a conservative activist. And I have been critical of this Court. You've been critical of me. But I have not been sanctioned here. And I hope that you can put the partisanship aside. Because this decision that you're going to reach, and I hope that you'll be reasoned. It won't just be, you know, claiming you lose. Okay, sorry. This is going to have far-reaching implications, not just for me, but for any litigant. It goes far beyond me. And that's the matter that is very important. Do I have any time left on my first sentence? You don't, but I'll give you a couple minutes for a rebuttal. We're going to hear from each other. Thank you. Good morning, Your Honor. Sly Paterno, representing defendants at Pelleas. Your Honor, in this case, the District Court acted correctly and certainly did not abuse its discretion in issuing a narrowly tailored pre-filing injunction requiring Mr. Klayman to seek leave of court before filing another claim against these specific defendants or other D.C. bar-related officials that collaterally attack ongoing disciplinary proceedings. The District Court bent over backwards to make sure that it was protecting Mr. Klayman's rights while also litigation. It considered hundreds of pages of documents opposing defendants' motions. It held an hour and a half long hearing. With respect to these re-litigation type of injunctions, I mean, the record that was created here by the District Court does not rise to the level of the other types of cases where we have upheld such injunctions, which often involve, you know, dozens or hundreds of lawsuits. You know, and the rationale behind those injunctions is really to protect the inherent authority of the courts, not to protect, you know, defendants that may be sued. So how does this injunction here fit within those cases? I mean, I know there are a couple of cases that were cited with, you know, a small number of types of injunctions are usually issued. Sure, Your Honor. A few responses to that. One is, and certainly in Ray Powell, the case where this court set forth the three-factor test, it did say that the court needs to look at the number and also the content of the filings. And the following year, in a case that we cite called Kuiper, the courts looked at only a couple cases that had been filed there, a couple prior filings, and conceded the number is not as great as it was in Powell, but nevertheless, because of the content of those filings, because of the numbers of motions that were filed in each case, because of the harassing nature of the filings, that that was adequate for a pre-filing injunction. And this court has not hesitated to affirm cases over and over, to affirm district court decisions over and over, issuing pre-filing injunctions in the, where there's a number of prior filings similar to here. For example, this case is different though, because the D.C. Bar continues to bring suits against Mr. Clayman. So there are new actions being taken against Mr. Clayman, against which he is defending himself. So that's also different from a context in which a plaintiff might be just bringing new litigation as a kind of sword rather than as a shield. Sure, Your Honor. Well, to be clear, all of the cases consolidated and under review here in this appeal, all concern the three disciplinary proceedings that this court already considered in Clayman 1 and 2. And I think that gets to the other reason why this case is different, Your Honor, perhaps than, you know, some of, in Ray Powell or some of the other cases. And that's the fact that Mr. Clayman's filings in this case directly contradict this court's prior holdings. It directly contradicts the D.C. Superior Court's prior holdings. We haven't issued any, the conduct at issue right now, and to which this pre-suit filing, pre-suit filing injunction pertains, is the conduct of sending copies of disciplinary, sending disciplinary notices from the bar to other bars of which Mr. Clayman is a member. Have we, have any of the prior cases that you reference that he has brought involved a challenge to that sort of post-adjudicatory conduct? Yes, Your Honor. In the D.C. Superior Court case that we call Clayman 3, the court there in asserting that Defendant Porter's, that's the same defendant here, Defendant Porter's conduct deviated from her scope of work as bar counsel, plaintiff Mr. Clayman directs the court's attention to Defendant Porter's notification of plaintiff's 30-day suspension implemented by the D.C. Court of Appeals. This court adjudicated that issue? This court hasn't adjudicated that issue, no, Your Honor. So there's maybe two cases where he's raised it, none of which have yet been cleared? Well, and to be clear, in that D.C. Superior Court case, Mr. Clayman this morning said he had never been sanctioned before. He actually was sanctioned in that case. Let's decide my point right now, which is on this question of sending letters. Right. That's new. That specific issue is new, yes, Your Honor. It has not yet been before this court. That specific issue hasn't been before the court. And it's not covered by any of our prior decisions. But that factual issue has not been covered. That legal issue also has not been covered. Well, the legal issue of defendant's absolute immunity has been covered by this court. And the court made clear... Well, I'm not sure if that's true. The immunities that we've spoken about before have involved the, for lack of a better word, the adjudication of disciplinary violations or not. Now, the letters were all issued after those adjudicatory decisions became, disciplinary decisions were finalized. And they seem, at least in description I understand from your brief, to be sort of an administrative action that is taken following the conclusion of the disciplinary proceeding. And so I don't know how we are to understand that type of is it something that automatically happens every time someone has been adjudicated to have a disciplinary violation? Your Honor, the letter, you can find it in the record. It's at pages 28 and pages 128. There are copies of the letter that was sent from the bar. And you'll see that it's a standard letter. It's a form letter notifying other bars where Mr. Klayman, other jurisdictions where Mr. Klayman admitted to practice of the sanction that had been imposed by the D.C. Court of Appeals. The sanction was final, Your Honor, but even in his own pleadings, Mr. Klayman continually insists that the proceedings were not final. He had filed a motion for clarification, a motion for rehearing. That's actually, as I understand it, that's one of his complaints is that the bar sent these, or excuse me, my client sent these out to the other proceedings. That doesn't mean that everything that's done within a bar, issuing paychecks to his employees, should be covered by the immunity provision. And you said these are form letters. My first question is, are letters like this sent in every case when disciplinary, automatically when disciplinary conduct is issued? That's my understanding, Your Honor. It's sent as a matter of course. The rules don't ever anywhere talk about, there's no rule that actually talks about that happening. But you're representing that 100% of the cases where disciplinary conduct, disciplinary sanctions are imposed, suspension, whatever, notifications are, I know the attorneys are supposed to notify their other bars, but right, so you're telling me that the bar itself, the D.C. bar itself, automatically sends these letters out. It's my understanding the final sanctions for suspensions issued by the District of Columbia Court of Appeals. I can't speak to other types of sanctions, but the bar rules do contemplate. Who sends it? You said it's a form letter. Is it done, it may be signed by somebody, but is it just sort of administrative staff that send these letters out? This was sent by one of the defendants, Your Honor, Mr. Bloom. Really, the defendant actually sort of put that in the envelope and sent it out? Or was it, it may have been signed by that person as a form letter, but who actually is administratively mailing these out? My understanding, Your Honor, is that Assistant District, Assistant Disciplinary Counsel Bloom actually, you know, looks at this, the sanction that was imposed, puts together the letter, mails it, and that's part of the reason. I'm asking if the physical mailing of it out is done by Mr. Bloom or Ms. Bloom? Your Honor, he at least oversees it. Obviously, I don't know if he, you know, walks into the, puts it in the mailbox himself or if there's an assistant. That's kind of relevant, whether it's going to be covered by, at least whether it's a novel question, whether it's covered by absolute immunity, if it's done at a ministerial level, if there's, I had assumed that there would be staff that would be in charge of holding and sealing envelopes and putting on stamps and putting them in the mailbox. Maybe I'm incorrect. I can't speak to it, Your Honor. It sounds like this is happening in large, I mean, large volume if it's happening for everybody. Correct. Yes, I can't speak to the staff's involvement in the actual, as you said, putting in the envelopes, putting stamps. I assume you're probably right that there's staff that does that, but the record shows that Mr. Bloom is the person who signed the letter and directed it to the different jurisdictions. But again, Your Honor, it is a novel question in this court, but the D.C. Superior Court. Why wasn't the copy provided to C.C., the person who has been disciplined? I mean, it seems a little odd to me that there's been all this litigation where he says he can't even get a copy of it. Right. Well, yet you're saying it's a matter of public records. So why didn't D.C. Bard send him a copy? I think for the reason you're saying, it is an administrative burden to put all these letters together to send them out. And so one more copy to Mr. Klayman would have been too much. Well, Your Honor, they went out as the complaint alleges to all the jurisdictions in which Mr. Klayman or any other respondent who is sanctioned by the D.C. Court of Appeals that it goes out to all of those jurisdictions. And so it wouldn't just be one more letter. It would be, you know, times two for every jurisdiction. But let me ask you whether the rules provide some notice that suspensions by the D.C. Court of Appeals, those are a matter of public record. But in addition, it the bar will notify the individual jurisdictions in which the member of the bar has an active membership. Is there no notice during the proceeding? Your Honor, I know that the D.C. Bar Rule 11, Section 17C contemplates that notice of my clients to other jurisdictions. And I think that that shows that, you know, at least formal admonitions, as is the case here, would be sent. And as Judge Millett, as you mentioned, the opposite during construction, the fact that they list one specific thing as leading to notice, whether it would make sense or not, implies that other things are not subject to that notice. It's at least entirely ambiguous. Well, I think it shows, Your Honor, here the relevant question is whether defendants acted within the scope of their duties, within the scope of their authority. And I think here it shows, along with the ABA model rule, along with the rules, as you said, in every jurisdiction that require plaintiffs themselves to notify the courts, there are rules requiring the bar officials in every jurisdiction to obtain notice from other jurisdictions. So lots of these rules contemplate that there would be. There's nothing specific in the record that says they will absolutely send it. You're right. But you said it's just automatic. So it's even almost a ministerial duty by whoever is signing the letter. Is that correct? It's probably a foreign letter, like you said, and they changed the name and what the discipline was, but it's not even, I mean, would any of the disciplinary counsel have even had discretion not to send the letter? Well, Your Honor, I think they, for the reason you said, because there's not a rule requiring it, I think that they could have discretion. I think as a matter of practice, they do send it out. I mean, the problem is we're dealing now with an unwritten rule that's not reflected in anything published. Do they have discretion or not? They do have discretion. But they sometimes don't send these letters out. Well, I think they have discretion, Your Honor, but I think as a matter of practice, they do send them. 100% of the time? That's my understanding, Your Honor. On what basis would they exercise discretion not to send the notice out? Well, I think if, for example, if the bar, well, Your Honor, the record doesn't show and doesn't speak to that, I think the fact that they have done it never does not mean they don't have discretion. I'm sorry, counsel. Did you finish your response? Yes, Your Honor. The point I was making was just the fact that they have discretion to send or not to send, there's no requirement to send, but that does not mean that the fact that they send them in every case as a matter of course doesn't mean that they don't have the discretion. Well, my hypothetical would be where a very preeminent member of the bar is sanctioned, and there's no question because the member of the bar says so, and he immediately files an appeal, says this is outrageous, et cetera, and even going to take it to the Supreme Court. Let's just suppose a hypothetical. What I'm trying to understand in my own mind is suppose as far as the D.C. Court of Appeals is concerned, this lawyer should be suspended or debarred even, but the lawyer looking at it objectively has a nice argument, whether it's a procedural or legal objection to what happened. And a lot of these situations, as you know, that even come to this jurisdiction to the D.C. bar, they're due process arguments that are raised, and that bar examines them to decide whether or not that, excuse me, that court decides whether or not it's going to apply complementary sanctions here. So if New York suspends someone for six months, but the argument is hypothetically that the lawyer didn't receive due process and the lawyer has some, at least facially, a good argument that the court decides it needs to consider, at least, and it may issue an opinion saying that, in fact, either it disagrees or it agrees and it's not going to impose reciprocal discipline. I'm trying to understand how the process works where a lawyer who has gone through the system and the process and let's hypothetically say that the sanctioning court followed all the rules, et cetera, but may have a good case for setting this aside. Do all those automatic letters, and suppose the lawyer practices throughout the United States, much less internationally. What happens? In other words, this lawyer is pursuing an appeal and has made it perfectly clear he's going to the Supreme Court with the case. Are all these other jurisdictions notified nonetheless, but the forum letter makes no mention of the fact that the suspension imposed, let's say hypothetically by the D.C. Court of Appeals, is final as far as that court is concerned, but it is under active challenge. In other words, how does this system work nowadays? What I'm thinking of is a lot of these rules, we will go back to King George III, were developed in a context where communication was much less instantaneous and practice was much less international, much less national, and we're sort of in a different era and have been for many decades. It's just what happens here, and I'm trying to hypothesize poorly, I understand, a situation where a lawyer, as Mr. Klayman is arguing, he really has a good argument as to he should not be sanctioned, and yet during the consideration of that argument, he in effect is barred from practicing elsewhere, or at least that is what the letter is suggesting, that reciprocal discipline ought to be imposed. Sorry for the long question, but you get the gist. Yes, Your Honor. To be clear, the letter does not make any representation about whether reciprocal discipline should be imposed or not. The letter, again, this is at page 28 of the appendix, just says, enclosed, please find a copy of an order of the District of Columbia Court of Appeals disciplining the above-named attorney. Our records reflect that he's admitted to practice near-jurisdiction, period, and it attaches the letter, and attaches the decision by the Court of Appeals. Right, so it's just information only, and then it's up to the other jurisdiction to decide whether to do anything. Correct, Your Honor, and of course the decision by the D.C. He doesn't know the timing of when it's gone out, then he isn't in a position to inform the other bar that hang on, hang on, I've filed a certification. Right, but as you said, Your Honor, he already is under the obligation to notify the when the D.C. Court of Appeals rolls, or when he has exhausted any further reviews, such as the petition for certiorari. I believe in all the jurisdictions under question here, there was an obligation to notify the court when there was a final sanction imposed against them, and that happened when final has different meanings, sometimes it means the judgment of the D.C. Court of Appeals. I think a sanction all review has been exhausted. Right, I think a sanction in effect. So here, even though Mr. Clayman was pursuing further review of the sanction, it was in effect at the time that the decision was in effect. And I get your point, but a lot of the lawyers, sorry, sorry, I just want to finish this sentence. Of course, I lost contact. No, no, it's so hard over the phone, you're doing great. Is it clear, something you can cite me to that attorneys would know that they provide this notice even before they have exhausted review? Well, the District Court, or excuse me, the District of Columbia Court of Appeals decision made clear that the decision was was final, regardless of, you know, further review, or final as in effect. Right, yeah, so I apologize. In terms of final, I mean in effect at that point, and so to your discretion to not send a letter, I think if a respondent in one of these cases had notified a foreign jurisdiction, a jurisdiction of another state, that had basically sent the same letter, then I think there would be no need for... What if you filed a motion for stay of the sanction mentioned here with the D.C. Court of Appeals? Would you still have to go ahead and notify, or would you get to wait for action on the stay motion? Well, I think when the sanction is in effect, again, the purpose of this rule is to prevent foreign jurisdictions, jurisdictions in other states, from having a litigant in that court that has been sanctioned by another jurisdiction for some sort of attorney misconduct. It's to prevent them from of that other misconduct. And so here, that's all that my client sent this letter saying, attached, please find the decision of the District of Columbia Court of Appeals, period. I'm sorry, Judge, what? Oh, yeah. So I had a somewhat different question, which is one I already asked Mr. Klayman. Why doesn't federal common law apply to these officials? Well, Your Honor, that certainly hasn't been briefed in this case. As discussed, this court has already decided that Rule 11, Section 19A applies, and that the common law applies because these defendants are quasi-judicial officials. So I think that that decision is... It's a judgment, right? Excuse me? Wasn't that in an unpublished judgment? That was an unpublished decision. It was, Your Honor, but it cited the Simons case, which is a published decision and looks at D.C. But we've never said whether D.C. bar officials are federal officials or officials of the District of Columbia. And under some of our cases involving the Federal Tort Claims Act, we look to see, for D.C. entities in particular, we look to see how they were created, how they are funded, all of these different indicia about whether they should be treated as federal officials as opposed to district officials. So I know that wasn't briefed, but I'm wondering if you have any thoughts about that. Right. I don't, Your Honor. We'd be happy to research it and to file a supplemental briefing if Your Honor is interested. Because the standards are very different under federal common law than they would be... If the federal common law applies, then that's a different standard for immunity than under the D.C. bar rules. Right. Again, I do think that this case, not only in Claimant 1 and Claimant 2, but also in all the cases cited in that decision, particularly the Simons v. Bellinger case, did apply the same standard that applies here. So we're not asking you to create any new ground the district court certainly didn't create. Also, I'll just mention, I mean, if they were federal officials, then the Westfall Act might apply to them and provide immunity under the D.C. Act. Right. Your Honor, I think there would be several arguments. I think the federal common law applies different standards, as you said, but also would apply immunity to acts taken by quasi-judicial officials. Well, under the federal common law, though, it only would apply to a discretionary act, not a ministerial act. Right. So it may well be that the federal common law immunity would not cover these actions based on the discussion you were having earlier with Judge Millett. Right. Well, two responses, Your Honor. One is, again, I do think as a matter of course, these letters are sent, but I do still think it's a matter of discretion because, as we discussed, there's no specific rule requiring defendants to take this action. They do it as a matter of course, and they do it evenly to all respondents, but there's no rule requiring it. And it does require some work to figure out what are the jurisdictions where the respondent has been admitted, what's the sanction that's been imposed, those sorts of things. But secondly, Your Honor, I also don't want to lose sight. We've talked a lot about these letters, but of course this case, the overarching of Mr. Klayman's claims across all his cases to date, and there have been a dozen or that my clients are acting with some sort of improper motive, that they're abusing process by bringing these, investigating and prosecuting these disciplinary challenges. So he's, yes, alleged that these letters are part of that, but he alleges it in this broad scheme that they're out to get him. This particular case is just about the letters that are really in effect, isn't it? Well, I take it to be broader than about the letters. I do, Your Honor. If you look at the district court's decision where the district court compares, this is at 443 and 444 of the appendix, he compares the complaints in this case and the complaints in the prior cases. And much of it overlaps. It's the, here he focuses, Mr. Klayman does include this additional factual allegation about the letters. But A, as mentioned, that was already decided by the DC Superior Court. It said that sending out these letters does not deviate from the scope of defendant's duties. And B, sending those letters in Mr. Klayman's view is part of this broader process of this vendetta that my clients have against him to pursue him because of his political views, ideology. And that is the issue that this court already decided in Klayman 1 and Klayman 2, that those, that absolute immunity applies and that whatever this court said, whatever the reason for prosecuting these claims, that as long as the actions are taken within the this new factual allegation about the letters does not take any of the allegations outside the scope of defendant's duties. Judge Rogers, did you have a question still? Well, I guess I'm concerned. I think counsel responded appropriately as did one of the questions you or Judge Rau asked. But I'm concerned a little bit, as I understood counsel and correct me if I'm wrong, part of your concern was, well, this action taken by the DC bar officials is really designed to protect other courts from proceeding with counsel who are not properly admitted. And obviously, I don't know the practices in every jurisdiction, but it's fairly common that when you're filing something, you have to make a representation to the court in which you are filing it that you are a member of the bar. I'm just wondering what, I mean, I understand, well, maybe not every single jurisdiction does that, but lawyers are officers of the court to that extent. So I wonder what's happening. This is double protection, I suppose. We're not making any comment, but certainly a lot of lawyers in this jurisdiction, even before the modern day, practice in multiple jurisdictions, notably Maryland and Virginia. So I'm just wondering how the bar views all this now and with Mr. Klayman. And I thought this case really was more focused on the abuse aspect. And therefore, before he could file anything more, he would have to get the approval of the court. So I'm hearing a very different argument, yeah. Well, you're right, Your Honor, that the pre-filing injunction here is because of the abuse that the district court found Mr. Klayman's filings continue to impose on defendants. And to be clear, under the test on the In re Powell test, it's disjunctive. It can be, this is the third on the test, it's frivolous filings and it's harassing filings. And here, the district court found both. And this I think goes back, we come full circle, Judge Raud, to your first question. I think here, there's no question in my mind that there are frivolous filings and the district court found that not only based on the number, and that number, again, is consistent with several cases that this court has affirmed. In Arnold v. Secretary of the Navy, in Camper v. Brown, in Smith v. Scalia. Didn't the court count this case? Excuse me? Didn't the district court count this case? The district court considered the three cases, yes, Your Honor, filed here. Which involved a different legal question about the authority to send these letters out. And relatedly, the district court's... But again, Your Honor, if you look at Mr. Klayman's filings, the complaint, for example, defendants assert false and misleading claims that they have, quote, absolute immunity. This absolute immunity does not exist. You may have that in there too, but he also says, he also, in the litigation before us, is attacking something different. So it's, the Hadson, as I think we've been discussing here, has not yet gotten clear what the authority is or how it works, if it's ministerial or whether it's discretionary, but just 100% of the time, they all choose to exercise it the same way, or if it's written somewhere in a manual, it's something that simply hasn't been resolved. So surely that cannot count as either frivolous or repetitious. Well, again, Your Honor, it was resolved by Klayman III, by the DC Superior Court there. You're right, it hasn't been... The DC Court of Appeals. Right, but the district court was looked at and this court's case law showed the court can look at filings in any sort of forum. And so the DC Superior Court was looking at Rule 19A and the common law that applies absolute immunity to quasi-judicial... Right, so when a DC Superior Court or a state trial court makes a ruling, a federal court has to, or should, count that ruling as sort of conclusive on frivolousness? Well, Your Honor, it's a totality of the circumstances analysis, and that's what the district court did here. So it looked at frivolousness, but it also looked at harassment. That's the second prong of this, and it's a disjunctive test. And here there are undisputed, sworn affidavits talking about the stress that these filings have caused, the embarrassment, the distress, the effect to retirement plans, things like that. The fact that Mr. Klayman has insisted on continuing to serve process on these defendants' homes, despite their repeated requests to just serve attorney, their attorney. So even if you're not with me on frivolousness, I think here there is a record of frivolousness. But again, the harassment thing wouldn't, again, pertain to litigation about the authority to send these letters. That just hasn't happened before. It has not happened in this court. You're right, Your Honor, that letters. But again, the letters are... Where does the DC Superior Court say they had the authority to issue these letters? Do you have a site for that? Yes, Your Honor. It's the DC Superior Court case that's cited in our cases that is... I don't know if you had a jump site for where they talked about. If you don't, that's fine. You could send it later. It's number 2020 CA 000756B. And the court there doesn't say that there's a rule requiring this, but what the court says is that Mr. Klayman, like here, has offered the sending of these letters notifying other jurisdictions of suspension by the DC Court of Appeals. But he presented that as one of the reasons why defendants had exceeded the scope of their authority. And the Superior Court said, I'm not persuaded by that. The District Court applied absolute immunity and said... Didn't explain itself at all as to the authority to send those letters or how it worked. Excuse me, Your Honor? Superior Court didn't explain itself at all. It just said, I'm not persuaded and applied immunity. Well, it looked at this court's prior... No, but our prior case didn't deal with the sending letters issue. That's what I'm kind of... I think I'm not being clear here. I'm trying to find out if there's anything in that DC Superior Court opinion or any DC Court of Appeals ruling, if you have one, that talks about their authority to send the letters, their obligation to send the letters. And is that considered part of, one, that's not one, that's authority. Two, is it discretionary or mandatory slash ministerial? And three, is it done sort of 100% of the time if they have discretion? Your Honor, the... I'm sorry, one more thing. Four, is it considered sort of, if it's post-final adjudication, is it still considered part of the disciplinary adjudicatory process or is it an administrative process which would present a different... Maybe that would still fall within the scope of qualified immunity. Maybe it would not. Something that simply hasn't been briefed or resolved as far as I know. Right. The Superior Court, to be clear, does not go into that detail on all those questions. We have no precedent as far as you're aware of on answering any of those questions? None on those... You're right, Your Honor. None on those specific questions. But again, that's just a factual allegation that Mr. Klayman presents to support his... That the two claims here are abusive process and tortious interference. And he says that my clients have acted maliciously based on his ideology and his political views and that this is an example of their taking those actions. And again, to be... That's just hypothetical, but if someone brings a complaint and three of the claims are clearly covered by absolute immunity, the judge ruled this way, the judge ruled against me, the judge imposed this sentence. And then the fourth claim is, and the clerk of the court refused to file my papers. Could that complaint be dismissed on absolute immunity grounds? There, Your Honor, I think you're right that the filing of the papers would probably be a ministerial... I don't know. Actually, let's assume it's purely ministerial. Right. Assuming it's a ministerial duty and there's no discretion, then perhaps not. But again, here, I don't think it's ministerial. The fact that it happens in every case where the District of Columbia Court of Appeals has imposed the sanction doesn't mean that there's not discretion. Right. We just don't really know. We don't have a factual record on that. Excuse me, Your Honor? We just don't have a factual record. I get your argument. It could well be right, but we don't know. Correct. That's not in the record. But to zoom out, Your Honor, to be clear, the prefiling injunction here has a safety valve. Not only is it narrowly tailored, but it doesn't absolutely bar Mr. Klayman from bringing any action. It merely requires him to apply to any court, state court, federal court, any court where he proposes to bring litigation and to seek leave of the court. And so if there is... Can I ask you how that works? I'm sorry. I know we kept you a long time, but I don't know how this similar order. And I wanted to go file a lawsuit in Eastern District of Virginia. And so I know I have to attach a copy of the disciplinary order to my complaint. And then do I have to file a motion for approval in that court? The language of the injunction is an application. So I think it is like a motion to leave. Whom does that go? Does a judge have to get hauled in to decide that, or does the clerk of the court decide it? I think that the judge does, Your Honor. So a judge now has, in the Eastern District of Virginia, now has to go familiarize themselves with the disciplinary proceeding here and contents of this complaint and make an upfront judgment about overlap. Well, Your Honor, this is how it works. Right. Well, I assume so, to be clear, it has not happened in this case. The district court actually did not enforce. You can't file this to me. Is that appealable? I believe so, Your Honor. And I believe that's... But to appeal, I can have to file an application. With the court of appeals? Your Honor, that all... Three judges have to get on the case? I guess two points, Your Honor. One is, you know, this is hypothetical. I don't... Right. Well, that's the second point, Your Honor. Right. So you've been sort of dealing not just trial-level courts, but also I think, Your Honor, if Mr. Klayman were to speak leave from a district court in Eastern District of Virginia and that court were to deny it, I think then he likely could file an appeal. And I don't... The appeal require... Do you read this injunction as applies to all federal courts to require an application then to the court of appeals for permission to appeal? Your Honor, I think the injunction talks about cases and claims. So I don't think it would... Just on its face, I think he probably... Assuming the other rules, you know, allow for an appeal... What about a cert petition to the U.S. Supreme Court? That is not an appeal. In some way that... I don't know what's meant by new proceedings here or new cases, but it is not an appeal. It is a new process, a petition for review. Are those covered? Right. I don't... No, Your Honor, I don't think it's covered. I think the initial case... Do you think it just applies to trial-level courts within the federal system? I think it applies to the initial cases and claims filed in court and... So I wouldn't have an application to appeal EDVA judges' denial of a motion to file. Right. I think under this injunction that, you know, there might be other rules, rules in the Fourth Circuit or rules of the federal... We're just talking about an injunction. Right. I don't think the injunction would require that because... What about a state appellate court? It just says state courts. It's not qualified. Right. I don't think that it applies beyond the initial stage of the cases, the claims. The injunction doesn't talk about an appeal. I don't know how state characterizes their appellate courts. I mean, if they're discretionary review processes, I don't think that counts as a new proceeding or a new claim for review or not under this injunction. Right. I think if it is a new claim or a new case, then I think it would be covered. But again, the injunction here does not apply to disciplinary proceedings, the ongoing proceedings. The district court denied my client's request for it to apply to the proceeding that's in place right now in the D.C. Superior Court. It's only because at that point, the injunction doesn't say state proceedings. But going forward, it's going to apply to all new disciplinary proceedings. Is that right? Well, it does not apply to enjoining Mr. Klayman from litigating in the proper courts state disciplinary proceedings. So for example, the Bundy matter that he referenced in his motion Sorry, if they come to the district court to challenge a different disciplinary proceeding, and we'll make it a hypothetical person. I don't want to assume Mr. Klayman does things that require more action. So let's assume person X, after going through this proceeding now, does something completely different. It's charged for a completely different reason to be a violation of D.C. bar rules. And an 18-month suspension is imposed. And they come to the district court, and it happens to involve the same bar counsel or one of the same bar counsel. Is that covered? I think, Your Honor, if it's the same plaintiff, it's the same defendants, and it arises from the matters that are derived from the orders derived from. So if the D.C. Court of Appeals or the bar for its process said, normally, this would only be a 90-day suspension. But because this is your third strike, we're going to make it 18 months. Would the challenge in district court then be derived from these disciplinary proceedings? If they're a part of the reason for the discipline? I think it would, Your Honor. But again, there's a safety valve. So Mr. Klayman can go to court and make the point that you're making and say, for X, Y, Z reason, this new claim, this new case that I proposed to file is not frivolous, it's not harassing. And if he can make that showing, which is not any greater than the showing that's required under, for example, Federal Rule 11, to say this isn't a harassing claim, this isn't a frivolous claim, then he can bring it. So it's not an absolute bar. And it does not apply to the ongoing disciplinary proceedings where he has been charged. There, he's not bringing the case. He's litigating against the disciplinary proceedings. So there's nothing to stop him in the normal course from challenging those ongoing proceedings. I had just one more question. My colleagues don't have any, and that is on younger abstention. What was the ongoing proceeding at the time of the district court's ruling? Well, there are several ongoing proceedings, Your Honor. One, Mr. Klayman's complaint itself says, as we discussed, that the Sitaki proceeding was ongoing, that he was filing a hearing. He was seeking further review of the District Court of, excuse me, District of Columbia Court of Appeals sanctions. So that proceeding was ongoing. That's the one in the DC Superior Court? That was the, no, Your Honor. It is confusing. There are a lot of these. When he filed his claims in all three of these cases, he was continuing to- The district court ruled what was ongoing. Right. So when he filed the claims, the Sitaki proceeding was still ongoing because he was challenging it. When he filed- Sitaki and district court? No, Your Honor. The disciplinary proceeding. That's the one he was, he says that the bar counsel erred by sending these notices because he was continuing to challenge the sanction. That was the ongoing proceeding at that time. Secondly, there's the Bundy matter, which is the subject of his motion to stay, filed in the last few weeks. That's an ongoing proceeding. It's at the, before the board currently. And then there's a review by the District of Columbia Court of Appeals after that. That is not heard by the injunction. Do the letters relate to an ongoing proceeding? The seeking an injunction against the sending of the letters relate to an ongoing proceeding? There may be, there are invariably some ongoing proceedings in this suite of litigation, but the injunction sought against the letters, is that part of any ongoing proceedings? Well, again, Your Honor, when Mr. Klingman filed the case, the proceedings were ongoing at, in that Sataki matter, as he was seeking further review of the Court of Appeals sanction. Any other questions? Judge Rogers, do you have any questions? No, thank you. All right. We've kept you up quite a long time, helping us to understand this whole process. Thank you, Your Honor. I ask that you. Thank you very much. All right. Now, Mr. Klingman, we'll give you three minutes. Your Honor's asked some very good questions. Fortunately, my learned counsel over there didn't have the answers. Do you have the answer? I have the answer. There is no District of Columbia rule, disciplinary rule that requires to send those letters. There's nothing in there to that effect. Number two, Your Honor raised a good question. If this was proper, why wasn't I copied on it? That's ordinary professional practice. I know what was at stake. With regard to the Ninth Circuit, they made reference to an ongoing matter concerning Sataki, suggesting that I'm going to then be suspended for that when I hadn't even been suspended. That created a lot of problems and a lot of issues. I had my ability to file taken away. I had my ability to represent clients taken away in the Northern District and the Western District. This is serious. For them to cavalierly come up here, and he was just pulling that out of a hat. He doesn't have any basis for 90% of what he said when he was up here, in all due respect. He's making it up. There's nothing in the record. That was a good question Your Honor asked, too. There's nothing in the record. Have you had to file one of these applications yet? If so, can you tell me what the process was? I don't know the process. That's another reason why Judge Walton's orders are- Have you tried in another jurisdiction? Have you tried yet in another jurisdiction? I'm reaching the point of contemplating doing that, but here's the problem. Judge Walton's orders, all two of them, actually three. The preliminary injunction, which had no findings of fact and conclusions of law, no evidentiary hearing. The permanent, which also had no hearing under Rule 65, so I could explain these. This record would have been developed if we had had that hearing. There's no hearing. Consequently, those orders are of no force in effect. They raised all these questions, and these issues weren't addressed by Judge Walton. He just simply, in a blanket way, said you can't file any more cases. He also said in his most recent order, in effect, don't come back to me. You read it carefully. I already denied your motion today. I'm not going to listen to you again. That's why I have one here on this basis. He did not enjoin me just from federal court or from state court. I do submit that the Superior Court or the DC courts are the equivalent of state, but he enjoined from any other forum. My God, I mean, this is unbelievable. I've never seen anything like this. I've been practicing law for 46 years. Now, I understand there's an institutional bias. I'm Larry Klainman. This is the DC Bar, but DC Bar has to play by the same rules as its members. It used to have on its website a provision that everybody's to be treated equally, both people that are complained about, lawyers that are complained about, and the complainants. I'm not being treated that way. Now, this is a talking matter, by the way, and this is a statement that was simply false. That's still being challenged. I have a Rule 60 action in the Superior Court that was filed. That's the subject of where Judge Walton begrudgingly said, okay, you can continue with that because I just said federal, but do I have to apply now when I exercise appellate rights or Rule 60 rights because there's been false testimony? I said it doesn't apply to appellate things. Well, what he says doesn't really matter. That's a fair point. There's other matters that have been disciplinary actions that have been taken against you that have been final that precede this case. I don't, Your Honor, and they say they have no obligation to tell me, and there's nothing in the record to reflect one way or the other what they have done. You know, one other point is that this takes time. With regard to the Bundy matter, what takes time to go through this application process, if that was applicable, which it's not, I submit. But with the Bundy matter, when that went to a hearing before the Ad Hoc Hearing Committee, they could not find that I committed any ethical violation. That's very unusual. They didn't take supplementary evidence at that time when sanctioned. But D.C. Bar Rules says they must issue a ruling within 60 days, the Ad Hoc Hearing Committee. They didn't issue it for the next year. By the time this thing goes through the board and the D.C. Court of Appeals, they want me to be suspended again. And this is unbelievable. There's a case in Florida, I think we filed it in another pleading, which says that Bar Counsel can't hang back and wait for a suspension to conclude before filing another proceeding. And this is why I have to be able to react quickly to these things. Because hopefully I'll get a judge who will listen to what I have to say. Judge Walton, he's a nice man, but I think he got offended when I said, have you read the pleadings? Because I didn't think he had understood what the issues were at that time. Okay, thank you. Do my colleagues have any further questions? No, thank you. That case is submitted. Thank you. All right, thank you.
judges: Millett, Rao, Rogers